23-CR-29

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

UNITED STATES OF AMERICA,          Case No. 23-CR-29

      Plaintiff,               Vol. I

   vs.                            Casper, Wyoming
                                   November 27, 2023 a.m.
TUCKER DONALD WIRFEL,              11:16 a.m.

      Defendant.

---

TRANSCRIPT OF SENTENCING PROCEEDINGS

BEFORE THE HONORABLE SCOTT W. SKAVDAHL
UNITED STATES DISTRICT JUDGE

---

APPEARANCES:

For the Plaintiff:      TIMOTHY J. FORWOOD
                        United States Attorney's Office
                        2120 Capitol Avenue
                        Room 4002
                        Cheyenne, Wyoming 82001

For the Defendant:      TRACY HUCKE
                        Federal Public Defender's Office
                        214 West Lincolnway, Suite 31-A
                        Cheyenne, Wyoming 82001


*MEGAN E. STRAWN, RPR, CRR*
*111 S. Wolcott Street, Casper, WY 82601*
*307.232.2626 * strawnreporting@gmail.com*

*Proceedings reported with realtime stenography;*
*transcript produced with computer-aided transcription.*

23-CR-29

Vol. I - 2

# I N D E X

**JUDGMENT AND SENTENCE**                    **PAGE**

    Mr. Forwood                                16
    Ms. Hucke                                  18
    The Defendant                              23
    The Court                                  25

23-CR-29                                                    Vol. I - 3

 1        (Proceedings commenced at 11:16 a.m., November 27, 2023.)

 2        THE COURT:  Court is in session in the matter of

 3   United States of America versus Tucker Wirfel, Criminal Case

 4   No. 23-CR-029.  I note the presence of Mr. Wirfel and his

 5   counsel, Ms. Hucke, and counsel for the United States,

 6   Mr. Forwood.

 7        The matter is before the Court for purposes of

 8   sentencing.  And before we begin that process, are there any

 9   preliminary matters or issues we need to address, Mr. Forwood?

10        MR. FORWOOD:  Your Honor, I think the main issue

11   would be in reference to the United States' Sentencing

12   Memorandum, ECF 129, discussing the defendant's acceptance of

13   responsibility, the plea agreement, matters along those lines.

14        As the Court is aware, the defendant's release was

15   revoked just a couple of weeks ago.  In communications with

16   Ms. Hucke, the defendant will not object to the removal of his

17   acceptance of responsibility levels that were taken off.  As

18   outlined by the United States in our Sentencing Memorandum, I

19   believe this now results in a guideline range of 92 to 115

20   months.

21        I spoke with Ms. Harris earlier last week.  She and I

22   both agreed that did not seem like something that the PSR

23   needed to be updated to reflect, but it is something that I

24   think probably we just need to bring to the Court's attention

25   to discuss here in the beginning.  Thanks.

23-CR-29                                                    Vol. I - 4

 1          THE COURT:  All right.  Thank you.

 2          Ms. Hucke?

 3          MS. HUCKE:  And, Your Honor, I think the only

 4    additional matter we would like to discuss would be -- will

 5    require to seal the record.  So whenever the Court would feel

 6    that would be appropriate, we would ask to do that at some

 7    point during the hearing.

 8          THE COURT:  Let's go ahead -- I don't see anyone in

 9    the courtroom that is needing to be excluded, so let's go

10    ahead and seal the record now, and I'll hear from you on those

11    matters.

12                          *  *  *  *  *

13       (Sealed proceedings contained in Vol. Ia, pages 4 through

14    8.)

15                          *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

23-CR-29                                                    Vol. I - 9

1          THE COURT:  Let me verify timely receipt and review

2     of the presentence report with the defendant, Ms. Hucke?

3          MS. HUCKE:  Yes, Your Honor.

4          And we had submitted an objection to the amount that

5     was readily provable, which Ms. Harris did reject.  And at

6     this point, I don't think it's really worth putting on an

7     evidentiary hearing.  It doesn't change the guideline

8     calculation, so we're not wanting to pursue that at this time.

9          THE COURT:  All right.

10          I would note, for purposes of the record, that that

11     objection was to, I believe, 24 grams of fentanyl -- let

12     me -- maybe it was 28.  But in any event, as noted in her

13     response to the objection, that does not change the baseline

14     under the advisory guideline calculation.

15          So it does not appear to be material in that sense,

16     but I would note that that was there.

17          All right.  Let me verify with you, Mr. Wirfel, that

18     you've had the opportunity to review your presentence report

19     with your attorney?

20          THE DEFENDANT:  Yes, I did, Your Honor.

21          THE COURT:  All right.  And she was able to answer

22     any questions you may have had regarding its contents?

23          THE DEFENDANT:  She did, sir.

24          THE COURT:  All right.

25          I would advise the parties I have not reviewed nor

1    considered any other information or material other than that

2    contained in the presentence report and the sentencing

3    statements submitted by the parties.

4           I would also note that the Court did receive a letter

5    that was filed today, Exhibit D to the additional materials to

6    the original sentencing statement.  That letter was submitted

7    by a significant other.

8           With that, based upon the defendant's statement

9    regarding the objection and the withdrawal of that objection

10   given its lack of materiality, which the Court would agree --

11   it's actually 25 grams, and that's identified in the addendum.

12   So I would note it does not appear that there are any factual

13   or legal issues impacting the advisory guideline calculation.

14          That calculation is a little different than one that

15   was submitted due to the issue as noted by Mr. Forwood and

16   acknowledged by Ms. Hucke.  That change results in a couple of

17   modifications that need to be made under paragraphs 22 and 23.

18   Based upon the conduct and the circumstances as noted by the

19   United States, those two levels as set forth in 22 and the

20   one-level reduction as set forth in 23 would be removed from

21   the presentence report calculation.

22          That would result in a net advisory guideline

23   sentencing calculation of 24 -- total offense level of 24 as

24   opposed to 21 under paragraph 24.

25          And that would also result in a change to the

1   calculation.  Ultimately, we would be looking at a total

2   offense level of 24, a Criminal History Category V, which

3   establishes an advisory guideline sentencing range of 92 to

4   115 months; a supervised release period of three years;

5   probation, defendant is ineligible for; a fine range of 15,000

6   to 1 million; community restitution is authorized and

7   recommended in the amount of $500; and there is a $100 special

8   assessment.

9           Ms. Hucke, do you agree as to the guideline

10  calculation and applicable guideline provisions?

11          MS. HUCKE:  Yes, Your Honor.

12          THE COURT:  And, Mr. Forwood, does the United States

13  agree?

14          MR. FORWOOD:  Yes, Your Honor.

15          THE COURT:  All right.  Let me -- just for purposes

16  of -- I'll go ahead and seal the record.

17                        * * * * *

18      (Sealed proceedings contained in Vol. Ib, pages 12 through

19  15.)

20                        * * * * *

21

22

23

24

25

23-CR-29                                                    Vol. I - 16

1          THE COURT:  I would turn to the issues of sentencing,

2    and I would hear first from the United States, and then I'd

3    hear from the defense.

4          Mr. Forwood.

5          MR. FORWOOD:  Thank you, Your Honor.  May it please

6    the Court.

7          THE COURT:  Counsel.

8          MR. FORWOOD:  Counsel.

9          Your Honor, I won't berate too much of what is

10   already filed within the United States' Sentencing Memorandum.

11   What I will say is that this is a very unique situation that I

12   have not yet faced as a federal prosecutor of an individual

13   who received a large amount of controlled substance and was

14   given two very real opportunities to help himself, help law

15   enforcement, help his community, and squandered it away so

16   horribly.

17          And of note, Your Honor, in the United States'

18   Sentencing Memorandum, I would note to page 6.  The concern is

19   that it's more than just a relapse.  The first message on

20   page 6 is from him to the other individual, stating, "I have

21   like six people up here just waiting on me to get more that

22   have cash."

23          The defendant was doing more than just supplying his

24   habit that he relapsed on.

25          Further, we go down to page 10 through 11, and

1   there's a chain of messages there in which it appears that the

2   person he is communicating with that he was acquiring fentanyl

3   from is now acquiring it from the defendant.

4        One of the hard things with fentanyl, as the Court

5   has been seeing as we get more and more of these cases, is

6   that there are usually a number of different dealers that a

7   person uses.  This information we have was incredibly lucky

8   that we just got from this person, Dusty Harris, who was

9   pulled over, found with fentanyl, and we were able to see his

10  phone and see these messages.

11       I don't know if there's other people he was

12  communicating with.  I can tell you, Your Honor, that we have

13  acquired his phone, done a search warrant.  Due to encryption

14  purposes, we are not optimistic that we will get any useful

15  information from the phone.  So it might be limited to this;

16  it might be a lot more.  The United States does not know.

17       But what we do know is that we have a person with a

18  criminal history, Your Honor, that involves -- let me get to

19  it here -- aggravated burglary from 2013; possession of

20  controlled substances quite often in the teens, importantly of

21  which he was still on probation, looks like.  I thought some

22  of this was when he was still on -- I don't know.

23       But we have a prior felon.  We have a prior person

24  who has a long history of controlled substances who was given

25  a number of opportunities and keeps failing, Your Honor.

1          And the fact that he continued to sell drugs

2     afterwards shows that him losing the acceptance of

3     responsibility is incredibly important, Your Honor.  And a

4     guideline sentence, Your Honor, is incredibly important,

5     because fentanyl is nothing to be messed around with.  Defying

6     the Court's orders are nothing to be messed around with.

7          So the United States does believe that a sentence --

8     we will ask for a sentence at the low end of the guideline,

9     Your Honor, because he is pleading guilty.  But we do believe

10    that a -- but we do believe that a guideline sentence is

11    appropriate.  Thank you.

12         THE COURT:  Thank you.

13         Ms. Hucke, if you and Mr. Wirfel would come to the

14    podium.

15         MS. HUCKE:  Thank you.  May it please the Court.

16         THE COURT:  Counsel.

17         MS. HUCKE:  Counsel.

18         So I know that the Court has had the opportunity to

19    read the sentencing memo, and Mr. Wirfel does come before the

20    Court asking for a sentence of 57 months.  And most

21    importantly, Your Honor, I think -- I know that Mr. Wirfel has

22    prepared a statement and wants to address the Court and take

23    responsibility for his behavior.  But most importantly, it's

24    abundantly obvious that he's dealing with an extreme

25    addiction.  And it's not through choice that he has fallen

1    into this predicament.

2              Studies show that when someone is addicted,

3    especially to an opioid and fentanyl, that it does change your

4    brain chemistry.  He did well in treatment.  He wants to

5    continue his treatment.  But he found himself -- when he was

6    taken off of the Suboxone, really, the choice that was made at

7    that point not to fully reach out to all of his supports but

8    to turn to his old behavior and his old lifestyle was

9    really -- that's the bad choice he made, and he knows that.

10             But in that moment, because his addiction was so

11   severe and he was getting sick, he wasn't thinking clearly.

12   And I'll let him explain this better.  And, really, quite

13   frankly, it's because when he's dealing with this level of

14   addiction, he has suffered a form of brain damage, and his

15   brain needs to heal.

16             Moving forward, Mr. Wirfel thinks it's appropriate

17   that he be in custody for an extended period of time.  He's

18   aware that there are drugs in prison, and he's going to do

19   everything in his power to stay away from that so that he can

20   remain sober and be clean.  And he wants to do the RDAP

21   program, which I think, at this point, he will be eligible

22   for.

23             I know, often, when people have successfully

24   completed treatment, BOP has said that they're not eligible

25   for RDAP.  But in light of this humongous relapse that he had,

1    he's hoping that he will then be eligible for the RDAP

2    program, which has been shown to be a really good program.  I

3    think, first of all, when people are committed to that and

4    they've been sober and taken out of any situation where they

5    can obtain fentanyl, they are in a better place to really be

6    in that, to absorb that counseling and that treatment.  And

7    it's a long-term program, which will continue from when he

8    gets out.

9              Your Honor, I think it's most obvious that this

10   wasn't just a choice that he made other than he was really

11   panicking and fell into this and really felt it was out of his

12   control with his addiction, because relapse is a normal path

13   to recovery.  Studies have found that, often, people, when

14   they're -- before they are fully recovered, can have multiple

15   relapses.

16             And, unfortunately for Mr. Wirfel, he was in a legal

17   position where this relapse and this period of time is really

18   the worst thing that he could have done for himself.  And that

19   really shows me that that's not a choice to have all of the

20   benefits from the plea agreement and coming forward and

21   pleading guilty taken away from him, which he understands is

22   his own fault that he's lost those things.  He's not blaming

23   the Government for their position.

24             But that really shows at that time he was not

25   thinking clearly.  It's not a choice.  He's desperate because

1   he's getting sick and felt that the quickest way to help that

2   was to reach out and get the drugs illegally.

3          Now that he's had some period of sobriety, he really

4   wishes that he had reached out more to Eddie Lobatos, his

5   supervising agent; gone back to his treatment providers; found

6   another Suboxone provider that would have been able to

7   prescribe to him.  You know, if he had gone through Eddie, he

8   knows that would have been approved.

9          But in that moment, he didn't do so.  And that really

10  shows that it wasn't a choice and that he still has healing

11  that he needs to do.  His brain has not healed from this

12  addiction, and it's going to take a long time for him to heal

13  from this addiction, and he needs more treatment.

14         As the Court has seen from his PSR, this has been a

15  family issue that he's dealt with.  His father dealt with

16  being addicted to pills.  He lost his brother to an overdose.

17  He's desperate to continue the path to treatment so that his

18  mother doesn't have to bury another son.  And he's hoping that

19  he can get out of prison in time to still spend time with her

20  while she's alive, because she's had so many significant

21  health issues.

22         And just for the Court to know, I know his mother did

23  want to be present today but wasn't able to get a flight and

24  is not able, because of her medical status, to drive from

25  Cheyenne up to Casper.  So she was hoping to be present here

1    today.

2         But, Your Honor, I think he takes -- he understands

3    that he doesn't get the levels off the guidelines, but he does

4    ask the Court to consider a variance because he is here to

5    take responsibility.  He's committed to his treatment, and he

6    wants to move forward.

7         And, unfortunately, this relapse just happened at

8    absolutely the worst time for him legally.  That has really

9    affected everything in his life.

10        He does ask for the Court to consider a designation

11   to -- first to Englewood.  It's close to his family members.

12   His sister lives ten minutes away.  His mother lives in the

13   Denver Metro area.  So -- oh, I'm sorry.  His mother lives in

14   Cheyenne.  That's right.  So it is easier for her to travel to

15   Englewood so that she could visit him, as well as he's wanting

16   to be in that environment so that he can just focus on his

17   programming and treatment and do the RDAP program.

18        If Englewood is not available, he would ask for

19   Sheridan, Oregon.  Although it's far from his family, he's

20   done a lot of significant research on the programming

21   opportunities that they have there as well as just the

22   dynamics of that facility that he thinks that he could be

23   successful.  So he does ask the Court to consider one of those

24   and asks for a recommendation first to Englewood and second to

25   Sheridan.

 1          THE COURT:  All right.  Thank you, Ms. Hucke.

 2          Mr. Wirfel, you're entitled to speak in allocution of

 3   any sentence, and I'd hear from you at this time.

 4          THE DEFENDANT:  Thank you, Your Honor.

 5          So I stand before you today a broken man, a man since

 6   his early twenties that has been plagued with addiction.  I

 7   often wonder how I went from a bachelor's degree graduate with

 8   his whole life ahead of him to an opiate addict facing a

 9   prison sentence.  The word "addiction" is the only thing that

10   comes close to an explanation.

11          I wish I could formulate words that would even begin

12   to bring sense to what living with an opiate addiction is

13   like, but I can't.  And that's where I would ask for your

14   understanding.

15          While I was out on bond, things were going well at

16   first.  I completed 90 days in treatment and went home to have

17   my surgery.  My surgery went well but the turn of events after

18   did not.  Before leaving treatment, I started my medicated-

19   assisted treatment with Suboxone management.  I've had great

20   success with this in the past, and I figured that it would be

21   my best shot at sobriety for the future.

22          I had no idea that when I filled my scripts for my

23   surgery that one of the medications would cause me to be

24   immediately terminated from Cedar Mountain's MAT treatment and

25   cut from my Suboxone treatment dry.  This turn of events is

1  solely my fault as I had failed to read the rules and

2  regulations clearly.

3          I reached out to two other Suboxone providers in the

4  area; and, unfortunately, no other people in the area were

5  offering or taking any new clients.

6          Once I ran out of my Suboxone that I had, I went into

7  withdrawal, and I made one of the worst decisions of my life,

8  and that was a relapse.

9          I reached out to old ties and affiliations, a

10  decision that I will regret for the rest of my life.  It's a

11  decision that not only affects me but my family and my loved

12  ones, for this situation is just as hard on them as it is on

13  myself.

14          I can say nothing more than I'm powerless over my

15  addiction, and my life has become extremely unmanageable.  I

16  buried my brother two years ago because of fentanyl, and the

17  last thing a mother should have to do is bury her only

18  remaining child due to the same thing.

19          I want nothing more than change, Your Honor.  It's

20  very apparent I need continued, long-term treatment, and this

21  is something that I welcome.  I will not give up on myself or

22  my family, and I ask that the courts not give up on me,

23  either.

24          I would like to take this time to take full

25  responsibility for my actions.  I know that the decisions that

1   I have made solely have brought me in front of you today.  I

2   had celebrated three and a half years sober before the relapse

3   that instigated the original case that brought me in front of

4   you.  Therefore, I know, with the right tools and support, I

5   can remain sober.  I can be a success story, someone whose

6   written pages may be able to help and inspire others that

7   battle with addiction and unwritten pages may tell a success

8   story.

9           In closing, I want to apologize that I stand before

10  you today under these circumstances.  It is my fault alone.

11  When sentencing, I hope that you see before you a man that is

12  driven and desperate for change.

13          THE COURT:  Thank you, Mr. Wirfel.

14          Well, maybe I just don't get it.  Mr. Wirfel, your

15  brother died from the very substance that not only you were

16  addicted to but you were slinging.  I don't understand.

17  Certainly, the addiction issue, I get that.  But slinging it,

18  selling it, and doing it under the situation and circumstances

19  that you were in?

20          I thought you told Mr. Lobatos that you were not

21  going to -- not going to fill that script.  And now you're

22  telling me that, well, you didn't read the rules.  And so now

23  I -- you know, I should have.  I know I should have.

24          But here's the deal:  You've got to quit trying to

25  cut the corner, and you've got to look in the mirror and

1   acknowledge where the hell you are.  You're in a Federal

2   courtroom facing significant charges because you couldn't

3   resist the need to sell.  And I -- I get the addiction part,

4   but here's the other part of that:  To the extent we want to

5   say the addiction and -- preludes the drug transaction and

6   sale, I haven't seen any studies about that; but, certainly, I

7   know the users that will sell in order to support their own

8   habit.

9           But here's the psychology I have:  If you cannot

10  manage to make the right choices under supervised release or

11  under pretrial release and you continue to engage in substance

12  abuse, problems.  If you continue to engage in drug

13  transaction of a poison that kills people, guess what?

14  There's one choice, and it's 3553(a) -- I think (4) or (5),

15  and that is removal of somebody so that they can protect the

16  public.  The only way we can protect the public in that

17  situation is, is to incarcerate you.

18          And this isn't your first rodeo.  You've rosined up

19  the rope before.  So I certainly have empathy.  And your

20  history is such, the addiction is there.  But, God damn it,

21  keep it to yourself.  Killing people left and right.  Your

22  brother died, and that's what I really can't understand.

23          I mean, certainly, drowning the pains of that

24  situation with your own addiction, okay.  But this was not,

25  Well, I need a little hit here.  This was a period of days if

1    not at least a week engaged in this type of behavior.

2            And, Mr. Wirfel, you're not dumb.  You're very

3    intelligent.  Unfortunately, you've used your intelligence for

4    all the wrong things.  And the reality is, is that you could

5    be, probably, a great counselor.  Maybe you will be.  You'll

6    get that opportunity, potentially.  But that's the other

7    component of this.  It's not a matter that you don't

8    cognitively have the ability to understand.  I mean,

9    certainly, the brain chemistry is altered by your addictions,

10   but you have the capacity.

11           You write eloquently.  Now, can you act it?  It's

12   going to be up to you.  But I do not see -- given the facts

13   and the circumstances, consideration of the 3553(a) factors,

14   the Court finds that a sentence at the low end of the

15   applicable guideline is appropriate, and not only appropriate

16   but necessary.  And the Court would find a sentence of 92

17   months is sufficient but not greater than necessary given the

18   facts and circumstances.

19           I'll make the recommendations, but the reality is, is

20   Mr. Wirfel has engaged in significant misconduct even

21   subsequent to his impending sentence.  And despite the reality

22   of that, his choices to not only consume himself but to

23   continue to spread the poison are terribly disappointing and

24   require a sentence of 92 months.

25           Pursuant to the Sentencing Reform Act of 1984 and

1   those factors enumerated under Title 18 Section 3553(a), it is

2   the judgment and sentence of this Court that the defendant,

3   Tucker Donald Wirfel, is hereby sentenced to a term of 92

4   months in the custody of the Bureau of Prisons.

5            Upon release from imprisonment, Mr. Wirfel will be

6   placed on supervised release for three years.  And within 72

7   hours of his release, he shall report in person to the

8   probation office in the district to which he is released.

9            While on supervised release, Mr. Wirfel shall comply

10  with the mandatory and standard conditions adopted by this

11  Court as set forth in the general order adopting and setting

12  forth the District of Wyoming's mandatory and standard

13  conditions of supervised release and probation filed July 20,

14  2023, and referenced in the Presentence Investigation Report.

15           In accordance with those factors under Section

16  3553(a), the additional special conditions as detailed in

17  paragraph 92 of the Presentence Investigation Report are added

18  to address the nature and circumstances of the instant offense

19  and the defendant's history -- documented history of substance

20  use, mental health problems, and criminal history.

21           A search condition is ordered to promote public

22  safety through effective oversight, to enforce other

23  conditions of supervision, and to achieve the desired outcomes

24  of supervision.

25           As Mr. Wirfel has a pending criminal matter, a

1    condition requiring him to resolve any outstanding criminal

2    cases to the best of his ability will ensure his ability to

3    complete objectives of supervision and remain in compliance of

4    supervised release.

5         In accordance with Section 3583(d), the Court finds

6    these conditions are reasonably related to the deterrence of

7    criminal conduct; the protection of the public from further

8    crimes being committed by Mr. Wirfel; and Mr. Wirfel's

9    educational, vocational, medical, or other correctional needs;

10   and they involve no greater deprivation of liberty than is

11   reasonably necessary for the purposes of deterring criminal

12   activity, protecting the public, and promoting Mr. Wirfel's

13   rehabilitation and are consistent with the pertinent policy

14   statements issued by the Sentencing Commission.

15        The Court finds that community restitution is

16   authorized in this case and would impose $500 in community

17   restitution:  325 to be paid to the Wyoming Division of Victim

18   Services, because the statute makes me do that; and 175 paid

19   to the Wyoming Department of Behavioral Health, Substance

20   Abuse Division.

21        The Court finds that Mr. Wirfel does not have the

22   ability to pay a fine within the guideline range in addition

23   to community restitution, so no fine will be imposed.

24        It is further ordered that Mr. Wirfel shall pay a

25   special assessment fee in the amount of $100, which shall be

 1    due immediately, and payments of that obligation shall be made

 2    to the Clerk of the District Court for the District of

 3    Wyoming.

 4           He shall participate in the Inmate Financial

 5    Responsibility Program to pay his monetary obligations, which

 6    are due immediately, and, while incarcerated, make payments of

 7    at least $25 per quarter.  Any amounts remaining unpaid shall

 8    be paid commencing 60 days from his release in monthly

 9    payments of not less than 10 percent of his gross monthly

10    income.

11           The Court would emphatically and strongly urge that

12    he be allowed to participate in the Residential Drug Abuse

13    Program as such participation is absolutely critical to his

14    successful rehabilitation.

15           The Court would further -- given the changes, I won't

16    enforce the waiver of the right to appeal given that we're

17    operating in a situation that, arguably, the plea agreement is

18    no longer binding and in force.

19           So, Mr. Wirfel, I would also -- before I go there, I

20    would recommend him for consideration in Englewood, Colorado.

21    And if not in Englewood, Colorado, I would recommend Sheridan,

22    Oregon, because it appears to have the types of vocational and

23    treatment programs that would be beneficial to him.

24           Mr. Wirfel, you will have 14 days from the date of

25    entry of judgment and sentence in this matter to file a notice

1   of appeal if you wish to challenge the judgment and sentence

2   being imposed upon you today.  If you fail to file that notice

3   of appeal or have someone file it on your behalf with the

4   Clerk of Court, you could forever be barred from challenging

5   the judgment and sentence imposed upon you today.

6           Do you understand these rights?

7           THE DEFENDANT:  I do, Your Honor.

8           THE COURT:  If you have any questions regarding them,

9   please speak to Ms. Hucke.  Okay?

10          Ms. Hucke, any -- let me see if I can say it.  Any

11  objections to the sentence as pronounced?

12          MS. HUCKE:  No, Your Honor.

13          THE COURT:  Mr. Forwood?

14          MR. FORWOOD:  No, Your Honor.

15          THE COURT:  I'll impose the sentence as stated.

16          Mr. Wirfel, I challenge you, put your words to

17  action, and don't let your brother's death be just another

18  mark in the road.

19          Good luck.

20          MR. FORWOOD:  Your Honor, do we need to do anything

21  with the petition for action on pretrial release?

22          THE COURT:  I would -- based upon the Court's

23  sentence imposed in this matter, the Court would find that

24  that petition is moot given the sentence imposed.

25          Thank you.  We'll stand in recess.

23-CR-29                                                Vol. I - 32

1        (Proceedings concluded at 11:52 a.m., November 27, 2023.)

23-CR-29                                                    Vol. I - 33

1                     C E R T I F I C A T E

2

3          I, MEGAN E. STRAWN, Federal Official Court Reporter

4    for the United States District Court for the District of

5    Wyoming, a Registered Professional Reporter and Certified

6    Realtime Reporter, do hereby certify that I reported by

7    machine shorthand the proceedings contained herein on the

8    aforementioned subject on the date herein set forth, and that

9    the foregoing 23 pages constitute a full, true, and correct

10   transcript.

11          Dated this 4th day of January 2024.

12

13

14

15          _____/s/ Megan E. Strawn_____

16                    MEGAN E. STRAWN
                 Registered Professional Reporter
17                 Certified Realtime Reporter

18

19

20

21

22

23

24

25